## DAWSON *v.* CHISHOLM.

(*Supreme Court, General Term, First Department.* May 18, 1888.)

1. SALE—RESCISSION—WHEN ALLOWED—DEFECT IN THING SOLD.

On an exchange of yachts, and after delivery, plaintiff ascertained that the lead ballast had been removed from the yacht delivered to him by defendant. The evidence as to whether the ballast was to go with the yacht was conflicting, but defendant testified that he had given the agent who effected the exchange $100 to supply the ballast; and the agent swore that he had given the order for the ballast, and it had been cast, but he had never seen it, and there was no evidence that he had paid for it. *Held*, that the evidence sufficiently shows that the ballast was to go with the boat; and, never having been delivered or tendered, plaintiff was entitled, upon the discovery of the defect, to rescind the contract, or claim damages for the deception.

2. SAME—MISREPRESENTATIONS BY BROKER—LIABILITY OF SELLER.

An exchange of yachts was effected through a broker, who represented to plaintiff that the value of defendant's yacht was between $2,000 and $2,500, and that plaintiff would be able to sell her in a short time for more than $2,000. Defendant had at that time offered her for sale for $1,400. *Held*, that this established the fact that defendant did not value her at more than $1,400, and that the broker's representations were untrue; and although, perhaps, made in ignorance of the truth, these misrepresentations constituted a fraud for which the defendant was responsible while he retained its fruits.[1]

3. SAME—RELIANCE OF PURCHASER ON BROKER'S REPRESENTATIONS—CAVEAT EMPTOR.

A contract for an exchange of yachts was effected by plaintiff through defendant's agent, who represented to plaintiff that defendant's yacht was away from the city, and did not, until the day the contract was signed, inform him that she was in port. It appears to be the custom, in buying and selling yachts, to rely on the representations which are made as to their condition and completeness of outfit; and it was known that plaintiff intended to rely on the representations made to him, and to make no personal examination. *Held*, that the rule of *caveat emptor* did not apply.[2]

4. PRINCIPAL AND AGENT—BROKER AGENT FOR BOTH PARTIES, WHEN—MISREPRESENTATIONS OF BROKER.

A contract for an exchange of yachts was signed by plaintiff, as one of the parties, and by the broker through whom it was effected, for the defendant, the other party. Plaintiff sought to rescind the contract on the ground of material misrepresentations made to him by the broker for the purpose of inducing him to enter into it. *Held*, that the broker could not be considered to have been the agent of both parties so as to relieve the defendant from responsibility for his misrepresentations.

Appeal from judgment on report of referee.

Action by Benjamin F. Dawson against George N. Chisholm to rescind a contract, and for damages. Plaintiff appeals from a judgment in favor of defendant.

Argued before VAN BRUNT, P. J., and BARTLETT and BRADY, JJ.

*S. H. Olin*, for appellant. *N. P. Schenck*, for respondent.

VAN BRUNT, P. J. This action was brought to rescind a contract made between the plaintiff and the defendant for the exchange of certain yachts, and for damages. The plaintiff was the owner of a schooner yacht called the

---

[1] See, also, Lynch v. Trust Co., 18 Fed. Rep. 486; Henkel v. Trubee, (Conn.) 11 Atl. Rep. 722.

[2] Where the buyer of an article relies on a representation fraudulently made by the vendor, he is not barred of his right to relief by the mere fact that he had the opportunity of discovering that the representation was false, and might have known the truth by proper examination and inquiry. Burroughs v. Guano Co., (Ala.) 1 South. Rep. 212; Clark v. Ralls, (Iowa,) 24 N. W. Rep. 567. Concerning the rescission of a contract executed because of fraudulent representations, see Gammill's Heirs v. Johnson, (Ark.) 1 S. W. Rep. 610, and note; Barns v. Mahannah, (Kan.) 17 Pac. Rep. 319; Henkel v. Trubee, (Conn.) 11 Atl. Rep. 722; Whitworth v. Thomas, (Ala.) 3 South. Rep. 781; Cowles v. Barber, (Iowa,) 36 N. W. Rep. 897. On the general subject of fraud and false representations, see Grindrod v. Wolf, (Kan.) 16 Pac. Rep. 691, and note; Holcomb v. Noble, (Mich.) 37 N. W. Rep. 497, and note; Morgan v. Dinges, (Neb.) 36 N. W. Rep. 544; Anderson v. Rainey, (N. C.) 5 S. E. Rep. 182; Salm v. Israel, (Iowa,) 37 N. W. Rep. 387.

"Ranger," which he was desirous to dispose of; and the defendant was the owner of a smaller yacht, called the "Elfin," which he was desirous to dispose of. Both parties mentioned this fact to one A. Perry Bliven, who seems to have officiated as a yacht broker. In May, 1886, Bliven suggested to the plaintiff that he should take another boat in part payment for the Ranger, and presented a photograph of the yacht Elfin, and, according to the plaintiff's testimony, represented her to be worth from $2,000 to $2,500; that she was in first-class order, and ready to go into commission. Negotiations were then had between the parties, and the terms of an exchange were agreed upon. The defendant agreed to pay $3,500 in cash, and $2,000 by a delivery of the yacht Elfin, with all her furniture and outfit complete, for the Ranger. During the time of these negotiations, Bliven represented to plaintiff that the Elfin was not in the city of New York, but somewhere in the sound; and it was not until the day that the contract was signed that he stated to the plaintiff that the yacht was in port. The plaintiff did not go to examine the yacht, and it appears from the evidence that it is customary for parties to buy and sell articles of this description without personal examination. The contract was signed by the plaintiff, and by Bliven for the defendant, on the 3d of June, 1886. On the 7th of June the contract was carried out; the Ranger being delivered to the defendant, and the Elfin to a man authorized by the plaintiff to receive the same. At the time of the making of the contract, Bliven gave to plaintiff an inventory of the furniture and apparel of the yacht Elfin. The person in charge of the yacht went almost immediately to the plaintiff's house, and reported the condition she was in. The plaintiff, on Sunday, the 13th of June, went down to South Brooklyn, where the yacht was lying, and saw the vessel for the first time for himself, and upon the same day he wrote a letter to Bliven, the defendant's agent, calling attention to the fact that the Elfin had had her lead ballast removed when sold, and been delivered in its disabled condition, and requesting Bliven to notify the defendant that he repudiated the whole transaction, and that he would commence an action at once to set aside the sale. This action was thereupon commenced to rescind the contract as above stated. The learned referee before whom this case was tried found as a fact that Bliven stated to the plaintiff that the Elfin had a complete outfit, and was in perfect order; that he informed the plaintiff, at the same time, that she was not in commission, and that he was having ballast cast to fit her; that the plaintiff did not take the Elfin for the purpose of using her himself, but with the sole purpose of immediately selling her; and, when the exchange was made, he authorized Bliven to sell the Elfin for his account, and immediately after authorized other brokers also to sell her; and that the plaintiff was not induced to enter into said contract by any fraudulent statements on the part of Bliven or of any one else; and that, when the defendant delivered the Elfin to the plaintiff, he paid $100 to Bliven, and Bliven agreed to have iron ballast cast to fit the bottom of the Elfin; and that Bliven immediately thereafter had said ballast cast, and paid for it, and that said ballast is now ready for delivery at any time that it is required. Considerable evidence was introduced in respect to the question as to whether, upon the sale of this boat, the ballast was to go with her or not. Some of the witnesses testified that ballast went with the boat necessarily, and one witness (Bliven) stated that it did not go with the boat unless it was mentioned.

There seems to be no room for controversy in this case as to what the understanding was in this respect, because it appears from the defendant's own evidence that he claims to have given Mr. Bliven, his agent, $100 for the purpose of supplying ballast to go with the boat; and although the referee finds that this money was accepted for that purpose, and the ballast was made and paid for, and ready for delivery to the boat, there is no evidence whatever to sustain such finding. It is true that Bliven swears that he gave the order for the ballast, and that it had been cast at some foundry in Raymond street. He

had never seen it, and could not know that it was cast; and there is no evidence that he paid for the ballast, and only his uncorroborated testimony, which, at best, is open to grave suspicion, that he gave any order whatever. It therefore appears from the facts in this case that ballast was to go with the boat, and that no ballast was ever delivered or tendered. Such being the case, the plaintiff, upon the discovery of this fact, had a right to rescind the contract, and claim back his property from the defendant, or damages resulting from the deception which had been practiced upon him.

There is another view of this case, which seems to be established beyond all question; and that is that Bliven made false representations in regard to the value of the boat. The plaintiff swears that Bliven represented the boat to be worth from $2,000 to $2,500, and that the plaintiff would be able to sell her in a short period of time for more than the contract price, which was $2,000. Bliven's only reply to this testimony was, "I will not swear that I did not tell him that he would be able to sell her for more than the price fixed in the contract,"—a denial which, of course, cannot overcome the positive testimony of the plaintiff, which is supported by all the circumstances attending the making of the contract. That this representation was false, is manifest from the fact that at this very time the defendant was offering the yacht for sale, with ballast, for $1,400. We find that on the 17th of May, 1886, the defendant wrote to Manning's Yacht Agency, authorizing them to sell the yacht in question, delivered ready for cruising, with ballast and everything complete, for $1,400. Now, it is claimed that the defendant is not responsible for any of the representations which were untrue, made by Bliven in the course of the negotiations for this contract. And it seems to have been the theory of the referee that not only was the defendant not liable for such representations, but that no liability could arise, because there is no evidence to show that Bliven made these representations fraudulently. The rule has long been settled in this state that a vendor is responsible for material representations made by his agent without express authority, and in the absence of any actual knowledge by either the agent or principal whether the representations were true or false; and that one who, without knowledge of its truth or falsity, makes a material representation, is guilty of fraud, as much as if he knew it to be untrue. *Bennett* v. *Judson*, 21 N. Y. 238. And in the case of *Elwell* v. *Chamberlin*, 31 N. Y. 619, the principle is laid down that, if an agent defrauds a person with whom he is dealing, the principal, not having authorized or participated in the wrong, may, indeed, rescind when he discovers the fraud, on the terms of making complete restitution; but so long as he retains the benefit of the dealing he cannot claim immunity on the ground that the fraud was committed by his agent, and not by himself. Therefore, if the defendant desires to escape from responsibility because of the false representations of his agent, he must retire from the contract, and return all that he has received. He cannot claim that the agent was not authorized to make the representations, while he was still enjoying the fruits of the contract.

It is claimed that Bliven was the agent of both parties; but it appears from the evidence in this case that Bliven signed the contract for the defendant, that he evidently was working for him, and that he made the representations in question for the purpose of inducing the plaintiff to enter into this contract, and that he certainly misrepresented the condition of this boat and its value. It is true that the findings of fact by the court or referee will not be disturbed upon appeal, unless entirely unsupported by evidence, or very clearly against the weight of evidence, and that every presumption is in favor of the correctness of the judgment, and of the findings upon which it has been recovered. But in the case at bar the application of this rule does not relieve the conclusions of the referee from review. Some of the facts which have been found by him seem to be utterly unsupported by the evi-

dence, as has already been suggested; and others are found against the clear preponderance of evidence. The conceded facts in the case show that under this contract the plaintiff was entitled to receive this boat with her ballast, that no ballast has ever been delivered or tendered, that he was entitled to receive the boat in perfect order, and that her furniture has never been tendered; and, furthermore, that Bliven represented her to be of a value exceeding that called for in the contract at the very time that the defendant was offering the boat for sale at $600 less than the contract price. It may be said that Bliven did not know of this offer upon the part of the defendant. It is immaterial whether he knew the fact or not. It is conclusive evidence that the defendant did not place a higher value than $1,400 on it, and that Bliven was representing her to be worth $2,000. He was making a representation of which the defendant cannot reap the benefit.

The referee seems to have proceeded upon the theory, to some extent, that the rule of *caveat emptor* applied. But it is apparent from the facts of this case that this rule has no application to the circumstances under which this contract was made. It appears to be the custom, in the buying and selling of yachts, that purchasers should rely upon the representations which are made as to their condition and completeness of equipment, and not to make a personal examination unless it is perfectly convenient. At the time of these negotiations this yacht was represented to be at some little distance from the city of New York, and the plaintiff never knew that she was in port and accessible until the very day that the contract was signed. It was known that he relied upon the representations contained in the contract as to her condition, and that he did not intend to make any personal examination; and where parties make representations in regard to the condition of merchandise, knowing that the purchaser relies upon those representations, and not upon his own judgment, they are responsible for the verity of those representations. Under all the circumstances of the case, it would appear that the learned referee disposed of the issues involved upon an erroneous theory, and that the judgment must be reversed, and a new trial ordered, with costs to appellant, to abide the event.

BARTLETT and BRADY, JJ., concur.